[No. 17884-6-III.    Division Three.    November 2, 1999.]

DENNIS KING, ET AL., *as Guardians, Appellants*, v. CHARLES HUTSON, ET AL., *Defendants*, STEVENS COUNTY, *Respondent*.

*Don W. Schussler* and *Michael F. Shinn* of *Halverson & Applegate, P.S.*, for appellants.

*Susan W. Troppmann* of *Etter, McMahon, Lamberson & Clary, P.C.*, for respondent.

SCHULTHEIS, C.J. — The superior court summarily dismissed Dennis and Patricia King's tort action against Stevens County. Their suit alleged Stevens County was responsible for the damages they suffered as a result of an attack on Mrs. King by their neighbors' dogs. In this appeal, the Kings contend disputed issues of material fact exist as to whether the County failed to enforce the statutes that relate to dangerous dogs. RCW 16.08. We reverse in part.

For most of this decade, Charles Hutson and the Kings

were neighbors, residing in Stevens County. During the early 1990s, Mr. Hutson owned 10 to 14 dogs. His work took him away from home for days at a time, and the Kings said he left his dogs unleashed and without adequate food. The dogs frequently came onto the Kings' property, and were aggressive. They chased the Kings' children and on more than one occasion killed a barnyard animal. Mr. King stated he telephoned the Stevens County Sheriff's Office between a half-dozen and a dozen times during this period, to complain about the dogs. He went to the sheriff's office in person on December 28, 1993 and on January 12, 1994. At the time of his second visit, he requested that the sheriff send Mr. Hutson a warning letter. On January 17, the sheriff wrote to Mr. Hutson, informed him that his neighbor had complained about his "aggressive" dogs, and warned him that if his dogs attacked the Kings' children he would face criminal charges.

From February 1994 until February 1997, Mr. King did not contact the sheriff's office about Mr. Hutson's dogs. In June 1994, DeLinda Jones had moved in with Mr. Hutson, and she and Mr. King shot and killed most of the dogs over the next few months. In 1997, Ms. Jones and Mr. Hutson owned only two dogs. One of the dogs, Timmy, was a mixed breed Australian shepherd and weighed between 30 and 40 pounds. The Kings believed Timmy was the sole surviving member of the pack of dogs Mr. Hutson had allowed to roam in the early 1990s. Mr. Hutson and Ms. Jones had also acquired Keesha, a Caucasian Mountain Dog that weighed 80 to 100 pounds.

On the afternoon of February 17, 1997, Mrs. King left her house to feed her chickens. She encountered Keesha and Timmy outside in her yard with Ms. Jones's daughter, Barbery. Keesha jumped on Mrs. King, knocked her against her van, and latched onto her arm. The dog then dragged her around to the back of the van. At the same time, Timmy was nipping at her. Keesha still had her by the arm and was shaking her. Barbery was screaming, and Mrs. King's son Jake came to the door. When he saw the situation, he

went for his shotgun and killed Keesha. Timmy ran away. Mrs. King suffered severe and disfiguring injuries to her arm that required hospitalization, and also several bites to her back and legs that she attributed to Timmy.

Following this attack, Mr. King went to the sheriff's office. He demanded that "something" be done. He spoke to a deputy who asked why he was making such a big deal about a dog bite. Mr. King said he "basically started to come unglued." But another officer intervened, and promised Mr. King that Timmy would be quarantined. The deputies then referred Mr. King to the county prosecutor. While Mr. King was in the prosecutor's office, the prosecutor called Mr. Hutson and told him that if it was a criminal act he could be arrested.

After the prosecutor's phone call, Mr. Hutson tied up Timmy for about two weeks. A sheriff's deputy visited him over a month later and asked whether Mr. Hutson was willing to turn Timmy over to the sheriff's office to be destroyed. He refused. The deputy said Mr. Hutson told him he had given Timmy away. The Kings subsequently sold their business and moved out of Stevens County. They stated they could no longer live in their home, knowing that Timmy was still roaming their neighborhood and that Stevens County would do nothing to protect them.[1]

On November 26, 1997, the Kings filed this lawsuit against Mr. Hutson, Ms. Jones, and Stevens County. The Kings alleged the County, "knowing of the existence of a vicious pack of dangerous dogs kept and harbored by Defendants Hutson and Jones had a duty to investigate and take appropriate action to curtail and stop the attacks upon Plaintiffs['] family and property." They asserted the County

---

[1]Mr. King stated: "The failure of the Steven's [sic] County Sheriff's Department to follow through [on its promise to pick up Timmy and quarantine him], the open display of my wife's attacker next door, and with the knowledge that my wife and family would never really be safe from the animals harbored by our neighbor, my wife and family and I felt compelled to sell our fledgling business, our home, and move to Endicott, Washington. . . . The principal reason for that move was the fact that the Steven's [sic] County Sheriff's Department officials clearly took little interest in 'a dog problem' that not only threatened my family, but resulted in my wife sustaining serious injuries."

was "liable to Plaintiffs for the County's negligent and outrageous conduct, failing to take action both before and after the February 17, 1997 attack upon Patricia King to provide protection of any kind to Plaintiffs." The Kings prayed for an award of general and special damages suffered by them "[a]s a direct and proximate result of Defendant Stevens County[']s failure to investigate and take action . . . ."

The Kings subsequently settled their claims against Mr. Hutson and Ms. Jones. Stevens County successfully moved for summary judgment, citing the public duty doctrine; i.e., the County did not assume any special responsibility to the Kings in exercising its governmental functions. The Kings appeal.

First, the Kings contend a genuine issue of material fact exists as to whether Stevens County's conduct amounted to a breach of its duty to them under the "failure to enforce" exception to the public duty doctrine.

■■ The public duty doctrine generally provides that, to recover from a governmental entity in tort, a party must show that the entity breached a duty it owed to the injured person as an individual rather than an obligation it owed to the public at large. *Bailey v. Town of Forks*, 108 Wn.2d 262, 265, 737 P.2d 1257, 753 P.2d 523 (1987).[2] The "failure to enforce" exception to the public duty doctrine applies when a government agent responsible for enforcing a statutory requirement possesses actual knowledge of a statutory violation, fails to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the Legislature intended to protect. *Id.* at 268.

The statutory duty the County allegedly owed the Kings is described in RCW 16.08. Under RCW 16.08.100(1), the

---

[2]In *Bailey*, the court observed that the exceptions to the doctrine derive from the basic tort principles of duty, foreseeability, and consideration of public policy. In most situations, those principles are sufficient to determine whether a plaintiff has established a cause of action for negligence, regardless of whether the defendant is a governmental entity. However, the court in *Bailey* did not address whether the exceptions had consumed the rule because the facts there supported a holding that the "failure to enforce" exception to the doctrine applied. *Id.* at 267-68.

animal control authority[3] of a county "shall . . . immediately confiscate[]" "[a]ny dangerous dog" if the dog is not registered; or if its owner has not secured liability insurance as required under RCW 16.08.080, or maintained it in a proper enclosure; or if it is outside the enclosure or the owner's dwelling and is not under the physical restraint of a responsible person. Under subsection (2) of the same statute, the animal control authority must confiscate, quarantine, and thereafter destroy a dangerous dog that attacks or bites a person or other domestic animal.

According to the Kings, Timmy was a dangerous dog the sheriff had a duty to confiscate, even before he attacked Mrs. King in 1997. RCW 16.08.070(2) defines "dangerous dog." The section pertinent here describes a dangerous dog as "any dog that *according to the records of the appropriate authority*, . . . (b) has killed a domestic animal without provocation while off the owner's property . . . ." (Emphasis added.) The Kings contend Timmy was one of the dogs in the pack that had killed their animals in the early 1990s. But the sheriff's written reports of Mr. King's complaints note only that he described threatening behavior by the dogs toward his children and his animals. While Mr. King asserts otherwise, the Kings did not submit any evidence of a written report that stated he told the sheriff the pack of dogs killed his livestock. Since "the records of the appropriate authority"—in this case, the sheriff—did not include a report that Mr. Hutson's dogs killed the Kings' animals, Timmy did not fit the statutory definition of "dangerous dog" prior to February 1997.

Therefore, we hold the superior court properly granted the County's motion for summary judgment on the issue of whether the County had a duty to confiscate Timmy before he attacked Mrs. King. Absent that duty, the County is not liable for the injuries Mrs. King suffered on February 17, 1997.

Nevertheless, the sheriff's January 17, 1994 letter to Mr.

---

[3]The animal control authority for Stevens County is the Stevens County Sheriff. *See* RCW 16.08.070(5).

Hutson, sent at Mr. King's request, is part of the records of the sheriff's office, and supports an inference that all the dogs Mr. Hutson owned at that time were "potentially dangerous." Specifically, they had a "known propensity" to make unprovoked attacks—one of the statutory definitions of "potentially dangerous." RCW 16.08.070(1). Under the statute, the dogs would qualify as "dangerous" if they again bit, attacked or endangered the safety of humans or domestic animals. RCW 16.08.070(2)(c). Mr. King stated in his affidavit that he firmly believed that "by 1991 the pack of dogs . . . included . . . the dog, Timmy," and that Timmy was involved in the attacks. And, the parties agree that Timmy joined in Keesha's attack on Mrs. King in 1997.

We hold Mr. King's earlier reports to the sheriff's office about the threatening behavior of his neighbors' dogs, and evidence that Timmy was part of that pack, create a reasonable inference that Timmy also engaged in that behavior. The inference is sufficient to support a trier of fact finding he was a "potentially dangerous" dog that qualified as "dangerous" when he attacked Mrs. King in February 1997. That is, his prior behavior made him "potentially dangerous," so he did not have to inflict a severe injury on Mrs. King in 1997 to be deemed "dangerous." It was sufficient that he engaged in an unprovoked attack that threatened her safety. Evidence Mr. King reported the attack on his wife to the sheriff, and evidence the County did not confiscate Timmy, raise material issues concerning the County's liability to the Kings under the failure to enforce exception to the public duty doctrine.

We therefore reverse that portion of the summary judgment that dismissed the County from any liability to the Kings after the 1997 attack.[4] Given our holding, we do not decide whether the County assumed a duty to the Kings based upon alleged assurances it made to them after the 1997 attack.

---

[4] As stated earlier, this liability does not include liability for Timmy's biting Mrs. King. Whether the Kings can prove other, compensable damages is not the subject of this appeal.

■ Second, the Kings assert they raised a genuine issue of material fact as to whether Stevens County's conduct constituted the tort of outrage. The elements of the tort of outrage are: (1) extreme and outrageous conduct; (2) that the actor intends to cause, or is reckless in causing, emotional distress; and (3) that actually results in severe emotional distress to the plaintiff. *Keates v. City of Vancouver*, 73 Wn. App. 257, 263, 869 P.2d 88, *review denied*, 124 Wn.2d 1026 (1994). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3D 436 (1975) (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Summary judgment of dismissal is proper if the court determines that no reasonable person would regard the conduct in question as extreme and outrageous. *Keates*, 73 Wn. App. at 263-64.

Here, the sheriff's office investigated the attack on Mrs. King, who stated that her son had shot and killed the dog that had caused her severe injuries. The sheriff's office also told Mr. Hutson to quarantine the remaining dog, Timmy, for two weeks. Over a month later, it sent a deputy to pick up Timmy, but Mr. Hutson told the officer the dog was not there. While an issue exists as to whether the County was under a statutory duty to confiscate Timmy as a dangerous dog, based upon the 1997 attack coupled with the Kings' earlier complaints, its failure to do so cannot reasonably be considered to be extreme and outrageous conduct.

The superior court properly dismissed on summary judgment the Kings' claim the County's conduct constituted the tort of outrage.

In short, we reverse the summary judgment and remand for trial on the issue of whether the County breached a duty to the Kings to confiscate Timmy as a dangerous dog, after the 1997 attack on Mrs. King. We affirm the summary dismissal of the Kings' cause of action for the tort of outrage.

598

SWEENEY and KATO, JJ., concur.