# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STEVEN J. OLIVER, an individual, | No. 47645-2-II |
| Appellant, | |
| v. | |
| HENRY W. COOK and "JANE DOE" COOK, husband and wife and their marital community comprised thereof; and EUGENE L. MERO and "JANE DOE" MERO, husband and wife, and their marital community comprised thereof; LYNN A. O'CONNER and "JOHN DOE" O'CONNER, husband and wife, and their marital community comprised thereof; CITY OF CHEHALIS, a political subdivision of the State of Washington; GRAYS HARBOR COUNTY, a political subdivision of the State of Washington, | PUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Steven Oliver appeals the summary judgment dismissal of his action against Grays Harbor County and Eugene Mero for damages suffered from a dog bite. He argues that a former policy contained in the Grays Harbor Sheriff's Department Policies and Procedures manual created a duty that satisfied the failure to enforce exception to the public duty doctrine and that genuine issues of material fact exist regarding whether Mero breached a duty to him under a premises liability theory. Because the failure to enforce exception cannot be supported by an entity's failure to enforce a nonlegislative departmental policy, we affirm the summary judgment dismissal of Grays Harbor County. However, because genuine issues of material fact

remain regarding Oliver's premises liability claim, we reverse the summary judgment dismissal of Mero and we remand for further proceedings.

FACTS

A.    *Substantive Facts*

Steven Oliver operated an automobile shop that was located on Eugene Mero's property in Grays Harbor County.  In exchange for using Mero's property, Oliver performed repair and maintenance work for Mero.

Henry Cook was Mero's friend.  Cook owned a dog named "Scrappy," an eight-year-old male pit bull mix.  Clerk's Papers (CP) at 43.  Mero knew Scrappy could be aggressive; Scrappy often barked at passing strangers, and Mero avoided approaching vehicles when he knew Scrappy was in them.

On August 23, 2010, Cook arrived at the Mero property driving Mero's flatbed truck. Cook and Mero then left the property together in a different vehicle, leaving Scrappy inside the cab of Mero's truck with the window partially down.

Soon thereafter, Oliver arrived at the Mero property.  As Oliver walked past the passenger side of the flatbed truck, Scrappy lunged out of the passenger window and bit Oliver in the face, ripping off a significant portion of his nose.

Prior to his attack on Oliver, Scrappy had a history of aggressive and violent behavior.  In 2004, Scrappy attacked a Dachshund owned by one of Cook's neighbors in Grays Harbor County.  The attack, which occurred on the neighbor's property, tore off the Dachshund's toenail and left it with numerous puncture wounds.  The Grays Harbor County Sheriff's Department investigated the attack and issued Cook a Potentially Dangerous Dog Notification.

In 2007, Scrappy was involved in another incident in Grays Harbor County that required a response from the sheriff's department. Scrappy aggressively chased a seven-year-old boy who was visiting one of Cook's neighbors. The boy was able to reach the neighbor's residence without being bitten or otherwise injured. The sheriff's department issued Cook a second Potentially Dangerous Dog Notification.[1]

B.   *Procedural History*

Oliver brought suit in Thurston County Superior Court to recover damages for the injuries sustained in the 2010 attack, alleging defendants' negligence caused his injuries.[2]  Grays Harbor County filed a motion for summary judgment, seeking dismissal of all claims, arguing that it was immune from liability under the public duty doctrine. In response, Oliver argued that the Grays Harbor County Sheriff Department's Policies and Procedures, which created a more restrictive standard within the county for issuing a Dangerous Dog Notification than state law did, exposed the County to liability under the failure to enforce exception to the public duty doctrine.

---

[1] Scrappy was involved in an additional incident outside of the County. In 2008, in Chehalis, Scrappy lunged out of an open van window and bit the arm of a woman who was walking past. The Chehalis Police Department investigated the attack. This attack does not form the basis of Oliver's claims against the County.

[2] In addition to Grays Harbor County and Mero, Oliver named Cook, the City of Chehalis, and Lynn O'Conner, the co-owner of the property on which Oliver's injury occurred, as defendants. The County and Mero are the only defendants involved in this appeal.

No. 47645-2-II

Former departmental policy 1753,[3] in effect at the time of the 2004 and 2007 attacks, defined a "Dangerous Dog" as one that had been "previously found to be *potentially dangerous*, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans or domestic animals."[4] CP at 108 (emphasis added). In contrast, the corresponding State statute defined a dangerous dog as "any dog that . . . has been previously found to be potentially dangerous *because of injury inflicted on a human*, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans." RCW 16.08.070(2)(c) (emphasis added).

Oliver argued that Cook's receiving a Potentially Dangerous Dog Notification after Scrappy's 2004 attack on the Dachshund, and then Scrappy later exhibiting aggressive behavior toward the seven-year-old boy in 2007, required the sheriff's department to declare Scrappy a dangerous dog under its own policies. Oliver conceded that Scrappy was not a dangerous dog under RCW 16.08.070; however, he argued the County sheriff's department nonetheless breached its "statutory duty" created by its own departmental policies to declare Scrappy

---

[3] The departmental policy, which was adopted in 1993, was updated in 2008 to reflect the State legislature's 2002 amendment to RCW 16.08.070, which changed the definition of a dangerous dog. We cite the policy language in effect at the time of the 2004 and 2007 incidents.

[4] The former County departmental policy stated, "'Dangerous Dog' means any dog that according to the records of the appropriate authority:
    a. Has inflicted severe injury on a human being without provocation on public or private property,
    b. Has killed a domestic animal without provocation while off the owner's property, or
    c. Has been previously found to be potentially dangerous, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans or domestic animals."
Grays Harbor County Sheriff's Department Policies and Procedures, Potentially Dangerous / Dangerous Dogs, former policy 1753, section C(2).

4

dangerous. CP at 99. Oliver argued that the sheriff department's failure to enforce its own more restrictive regulation triggered the failure to enforce exception to the public duty doctrine, consequently creating liability for the County. The County argued that the failure to enforce exception cannot be based upon an alleged violation of departmental policy but must be based on a duty that arises from a statute or ordinance.

The superior court granted the County's motion for summary judgment, finding that the departmental policies Oliver cited could not support a claim under the failure to enforce exception.

Mero also moved for summary judgment dismissal, arguing that he breached no duties to Oliver under either a premises liability theory or under the common law rules about dangerous animals. The superior court granted this motion, dismissing Oliver's claims against Mero.[5] Oliver appeals both summary judgment orders.

ANALYSIS

Oliver appeals the superior court's orders of summary judgment dismissing both Grays Harbor County and Mero. We affirm the dismissal of Oliver's case against Grays Harbor County, but we reverse the dismissal of Oliver's case against Mero.

I. SUMMARY JUDGMENT PRINCIPLES

Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c); *Babcock v. Mason County*

---

[5] In making its oral ruling, the superior court relied on the analysis from an unpublished opinion, citing *Briscoe v. McWilliams*, noted at 176 Wn. App. 1010 (2013).

*Fire Dist. No. 6*, 144 Wn.2d 774, 784, 30 P.3d 1261 (2001). We review summary judgment orders de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). We also review the existence of a duty de novo. *Washburn v. City of Federal Way*, 178 Wn.2d 732, 753, 310 P.3d 1275 (2013).

A material fact is one on which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). All facts are considered in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park School Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citing *Atherton*, 115 Wn.2d at 516). The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton*, 115 Wn.2d at 516. "If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute." *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to do so, summary judgment is proper. *Vallandigham*, 154 Wn.2d at 26.

## II. GRAYS HARBOR COUNTY

A government is not liable for negligence unless it breached a duty of care. *Gorman v. Pierce County*, 176 Wn. App. 63, 75, 307 P.3d 795 (2013). Under the public duty doctrine, a party must show that the government breached a duty it owed to the injured person *as an individual* rather than an obligation it owed to the public at large. *King v. Hutson*, 97 Wn. App. 590, 594, 987 P.2d 655 (1999). If the public duty doctrine applies, the government is determined to owe no duty to the particular plaintiff. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988).

There are four exceptions to the public duty doctrine. *Babcock*, 144 Wn.2d at 786. However, this case involves only one: the failure to enforce exception. *Babcock*, 144 Wn.2d at 786. For this exception to apply, the governmental entity responsible for enforcing a statutory requirement must possess actual knowledge of a statutory violation and fail to take corrective action despite a statutory duty to do so, and the plaintiff must be within the class the legislature intended to protect. *King*, 97 Wn. App. at 594. The plaintiff has the burden to establish each element of the failure to enforce exception, and we construe the exception narrowly. *Gorman*, 176 Wn. App. at 77.

### III. FAILURE TO ENFORCE EXCEPTION DOES NOT APPLY

Oliver first argues that the failure to enforce exception to the public duty doctrine permits him to pursue his case against the County. We disagree.

Whether the failure to enforce exception to the public duty doctrine applies to departmental policies that were not formally enacted through legislative measures or promulgated through administrative procedures is an issue of first impression. To date, the only governmental duties to which our Supreme Court has applied the public duty doctrine are duties imposed by a statute, ordinance, or regulation.[6] *Munich v. Skagit Emergency Commc'ns Ctr.*,

---

[6] The *Munich* concurrence cites 29 cases in which the Supreme Court has applied the public duty doctrine to duties imposed under state statute, Washington Administrative Code (WAC), and city and county ordinances and regulatory codes. *Munich*, 175 Wn.2d at 886 n.3 (Chambers, J., concurring). But in none of these cases did the court impose a duty based on a departmental policy not adopted through statute, ordinance, or formal rule-making. *Munich*, 175 Wn.2d at 886 n.3 (Chambers, J., concurring). Likewise, no party here has cited authority to support this proposition.

175 Wn.2d 871, 886, 288 P.3d 328 (2012) (Chambers, J., concurring).[7] Oliver is asking us to expand the failure to enforce exception. We decline to do so, and we instead hold as a matter of law that the sheriff's department policies did not create a statutory duty under the exception.

A.      *Departmental Policies Do Not Have the Force of Law*

Oliver argues that the County had a statutory duty to issue Cook a Dangerous Dog Notification under former policy 1753 C(2)(c) of the Sheriff Department's Policies and Procedures.[8] However, our Supreme Court has made clear that, unlike legislatively-enacted statutes and ordinances or formally promulgated agency regulations, departmental policies and directives do not have the force of law. *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 323, 119 P.3d 825 (2005) (holding that a Department of Corrections policy directive did not support a jury instruction suggesting a legal obligation of an officer to act); *see also Mills v. W. Wash. Univ.*, 170 Wn.2d 903, 911, 246 P.3d 1254 (2011) ("[T]he paramount consideration is whether the rule (or regulation, order, directive, or policy) was promulgated pursuant to legislative delegation."); *State v. Brown*, 142 Wn.2d 57, 62, 11 P.3d 818 (2000) (holding that a violation of Department of Corrections rules could not support a conviction because the rules were not promulgated pursuant to legislative delegation of power).

---

[7] Justice Chambers's concurrence was signed by a majority of justices.

[8] Oliver concedes there was no statutory violation under chapter 16.08 RCW. Oliver further concedes that there was no legislatively-enacted County ordinance in place that could have been violated by the 2004 or 2007 incidents. Oliver's expert witness, Denise McVicker, also testified that there was no basis for the County to have declared Scrappy a dangerous dog under the state statute after the 2007 incident.

Further, the policy at issue was promulgated by the sheriff alone. County sheriffs and their deputies are empowered to enforce statutes and ordinances of their jurisdiction under chapter 36.28 RCW; however, the legislature has not delegated to them the power to create laws, or policies that have the force of law. *See* RCW 36.28.010.

Courts applying the failure to enforce exception have been clear: the County must have knowledge of a violation of an enactment with the force of law (be it a statute, ordinance, or regulation) that triggers a duty to protect a member of a class intended by the enacting body. *Munich*, 175 Wn.2d at 886; *King*, 97 Wn. App. at 594; *see also Gorman*, 176 Wn. App. at 77. Furthermore, our Supreme Court has determined that nonlegislative, nonpromulgated departmental policy does not have the force of law. *Mills*, 170 Wn.2d at 911; *Joyce*, 155 Wn.2d at 323; *Brown* 142 Wn.2d at 62. We, therefore, decline to expand the failure to enforce exception and hold that the sheriffs department's policies, as a matter of law, do not create a statutory duty under the exception.

B.      *Public Policy*

Oliver further argues that, as a matter of public policy, the failure to enforce exception should apply to departmental policies in the same way that it applies to legislatively-enacted statutes and ordinances because the underlying purpose of the exception is to protect people from foreseeable risks that arise when a governmental entity abrogates its stated duties. We disagree.

Oliver cites no authority for his public policy argument to expand the reach of the exception. On the other hand, courts have weighed in on the importance of limiting liability for the government under the public duty doctrine, holding that it reflects the policy that legislation meant to improve the public welfare "'should not be discouraged by subjecting a governmental

entity to unlimited liability.'" *Pierce v. Yakima County*, 161 Wn. App. 791, 798, 251 P.3d 270

(2011) (quoting *Taylor v. Stevens County*, 111 Wn.2d 159, 170, 759 P.2d 447 (1988)).

Washington courts have reinforced this policy by holding that courts should construe the failure

to enforce exception narrowly. *Gorman*, 176 Wn. App. at 77.

To expand the reach of the exception such that it can be triggered by departmental policy

would create potentially limitless liability for government entities that have no control over

policies enacted by police departments, fire departments, and building inspectors, among

countless others. *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 37 (2012).

Additionally, expansion of the failure to enforce exception to apply to departmental policies

would defeat the stated policy purpose of the public duty doctrine. Such an expansion would be

untenable.

## IV. EUGENE MERO

Oliver next argues that the superior court erred by granting summary judgment

dismissing his claim against Mero. We agree.

The scope of a landlord's duties in a dog bite case under premises liability is a question

of first impression in Washington. Prior case law in Washington has focused exclusively on the

common law theory of strict liability for a dog bite. Here, however, Oliver does not claim strict

liability but, instead, he argues a theory of premises liability. Although Washington courts have

not yet applied premises liability to a dog bite case, many other states have.[9] These states have

---

[9] *See, e.g.*, *King v. Breen*, 560 So. 2d 186, 189-91 (Ala. 1990); *Yuzon v. Collins*, 10 Cal. Rptr. 3d 18, 20 (Cal. Ct. App. 2004); *Legro v. Robinson*, 328 P.3d 238, 243 (Colo. App. 2012); *Giacalone v. Hous. Auth. of Town of Wallingford*, 51 A.3d 352, 356 (Conn. 2012); *Anderson v. Walthal*, 468 So. 2d 291, 294 (Fla. Dist. Ct. App. 1985); *Custer v. Coward*, 667 S.E. 2d 135, 138 (Ga. Ct.

made it clear that premises liability applies in dog bite cases—and involves a separate analysis from the common law, strict liability theory.

A.      *Premises Liability*

Oliver argues that Mero breached his duty to him under a premises liability theory because Oliver was Mero's invitee, and Mero failed to make the premises reasonably safe.  We agree that a genuine issue of material fact exists regarding whether Mero breached duties he owed to Oliver as an invitee.

The legal duty a landowner owes to a person entering the premises depends on whether the entrant is a trespasser, licensee, or invitee.  *See Younce v. Ferguson*, 106 Wn.2d 658, 662, 666, 724 P.2d 991 (1986).  Here, it is undisputed that Oliver was Mero's invitee.  A landowner is liable for an invitee's physical harm caused by a "'condition on the land'" only if the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Iwai v. State*, 129 Wn.2d 84, 93-94, 915 P.2d 1089 (1996) (quoting RESTATEMENT (SECOND) OF TORTS § 343 (1965)).  Here, Scrappy is the relevant "condition" on the land.  *See*

---

App. 2008); *Boswell v. Steele*, 348 P.3d 497, 505 (Idaho Ct. App. 2015); *McCraney v. Gibson*, 952 N.E.2d 284, 288 (Ind. Ct. App. 2011); *Fouts ex rel. Jensen v. Mason*, 592 N.W.2d 33, 38-39 (Iowa 1999); *Klimek v. Drzewiecki*, 352 N.W.2d 361, 363-64 (Mich. Ct. App. 1984); *Olier v. Bailey*, 2013–CA–01411–SCT, 164 So. 3d 982, ¶¶ 22-24 (Miss. 2015); *Wilson ex rel. Wilson v. Simmons*, 103 S.W.3d 211, 218 (Mo. Ct. App. 2003); *Knapton ex rel. E.K. v. Monk*, 2015 MT 111, ¶¶ 15-16, 379 Mont. 1, 347 P.3d 1257; *Twogood v. Wentz*, 2001 ND 167, ¶¶ 13-20, 634 N.W.2d 514, 518; *Mota v. Gruszczynski*, 197 Ohio App. 3d 750, 2012-Ohio-275, 968 N.E.2d 631, at ¶¶ 20-23; *Taylor v. Glenn*, 2010 OK Civ App 20, ¶¶ 6-10, 231 P.3d 765, 766; *DuBois v. Quilitzsch*, 21 A.3d 375, 381 (R.I. 2011); *Fletcher v. Richardson*, 603 S.W.2d 734, 736 (Tenn. 1980).

*Klimek v. Drzewiecki*, 135 Mich. App. 115, 119, 352 N.W.2d 361, 363 (1984).

Genuine issues of material fact exist regarding whether Mero breached his duty to Oliver as an invitee. Regarding whether Mero knew of the danger Scrappy posed, Mero testified in his deposition that he knew Scrappy to bark at passing strangers and let them know they "shouldn't go near that vehicle." CP at 207. Mero also testified that he avoided approaching vehicles when Scrappy was in them. This evidence raises a question of material fact about whether Mero knew Scrappy posed an unreasonable risk of harm.

Regarding whether Mero should expect that Oliver would not realize or protect himself against Scrappy's danger, Mero testified that it was unusual for Cook to be present at the shop. Oliver had never seen Scrappy at the shop. This evidence raises a question of material fact about whether Mero should have expected that Oliver would not discover or realize Scrappy's danger.

Regarding whether Mero failed to exercise reasonable care to protect Oliver from Scrappy, Mero was aware that he and Cook had left Scrappy in the truck at the shop with the window down, where Scrappy could lunge out to attack Oliver. This evidence raises a question of material fact about whether Mero failed to protect Oliver from the danger he knew Scrappy posed.

Viewing these facts in the light most favorable to Oliver, there is a genuine issue of material fact regarding whether Mero breached a duty of care to Oliver as an invitee. Therefore, summary judgment was inappropriate on this claim.

B.  *Common Law Does Not Limit Mero's Liability*

Mero appears to argue that these premises liability rules do not apply where dogs are involved.  He argues that, as a matter of law, Mero was not liable to Oliver under common law strict liability rules because he did not own Scrappy.  We disagree.

We note that all of the Washington cases addressing dog bite liability appear to address only the common law rules for animal attacks.  At common law, only the owner, keeper, or harborer of a dangerous animal is strictly liable for injuries the animal causes.  *See, e.g.*, *Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994); *Shafer v. Beyers*, 26 Wn. App. 442, 446-47, 613 P.2d 554 (1980).  But this common law theory is separate from premises liability.  As discussed above, other states recognize that strict liability for dog bites is a separate theory from premises liability.  In other words, strict liability is not the only cause of action for a dog bite.  Nor is there a dog bite exception to ordinary premises liability rules.

However, Washington cases have not yet drawn the distinction between the common law theory and premises liability for dog bites.  *See, e.g.*, *Frobig*, 124 Wn.2d at 735.  We follow numerous courts in other states and hold that premises liability creates a separate theory of recovery for a plaintiff injured by a dog bite.

Oliver was Mero's invitee and he was injured on Mero's premises.  Under premises liability, Oliver has raised a genuine issue of material fact about whether Mero breached a duty he owed to Oliver as an invitee to make the premises reasonably safe from dangers Oliver may not have anticipated.  We reverse summary judgment on the premises liability theory.[10]

---

[10] Oliver also argues that the superior court erred by relying on an unpublished appellate decision to make its summary judgment ruling.  We do not consider this argument, because the superior

CONCLUSION

We affirm the superior court's order granting summary judgment to Grays Harbor County and hold that the failure to enforce exception to the public duty doctrine cannot be supported by an entity's failure to enforce a nonlegislative departmental policy. Also, we reverse the superior court's order granting summary judgment to Mero because genuine issues of material fact remain regarding Oliver's premises liability claim and we remand for further proceedings.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.

---

court's reasoning on summary judgment is not relevant. *See Olympic Tug & Barge, Inc. v. Dep't of Revenue*, 188 Wn. App. 949, 951 n.3, 355 P.3d 1199 (2015).