# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WARNER ROBINSON, a minor child, and DEVIN and REBA ROBINSON, a married couple on behalf of themselves and as Litigation Guardian Ad Litems of the minor child, | No. 59361-1-II |
| Appellants, | |
| v. | |
| MILESTONE AT HUDSON HEIGHTS, LLC, a dissolved Washington state limited liability company; THE MILESTONE COMPANIES, LLC, a Washington limited liability company; MILESTONE INVESTMENT PROPERTIES, LLC, a Washington limited liability company; RONALD NEWMAN and "JOHN/JANE DOE" NEWMAN, a married couple and the marital community thereof, | UNPUBLISHED OPINION |
| Respondents, | |
| HUDSON HEIGHTS HOMEOWNERS ASSOCIATION, a dissolved Washington state non-profit corporation; L. BRANDON SMITH and "JOHN/JANE DOE" SMITH, a married couple and the marital community thereof; KAYNO NOMURA, a single individual; NAOMI NOMURA, a single individual; KAHNORA NOMURA, a single individual; DOES 1-10, inclusively; and DOE CORPORATIONS 1-10, inclusively, | |
| Defendants. | |

GLASGOW, J.—In early January 2020, Reba Robinson saw two dogs barking at a woman and her child in a common area of the townhome complex Robinson lived in with her family. Milestone at Hudson Heights owned the complex. Robinson emailed Milestone's property

manager, Tanya Chapman-Nelson, about the dogs. Chapman-Nelson investigated and discovered at least one of the dogs was visiting the Nomuras, who were also tenants in the complex. Chapman-Nelson issued a warning to the Nomuras.

About three months later, one of the same dogs bit the Robinsons' three-year-old son while he was at the common playground area of the complex with his father. The Robinsons sued the Nomuras and Milestone for negligence. The Nomuras failed to appear and default judgment was entered against them. Milestone moved for summary judgment dismissal of the claims against it, arguing that landlords could not be held liable under a premises liability theory for a dog bite on their property and that they did not have a special relationship with the Robinsons that created a duty to protect them against dog bites from dogs they did not own. The trial court granted summary judgment in favor of Milestone. The Robinsons appeal.

We conclude that all of the Robinsons' claims against Milestone arise from premises liability, and as a result *Saralegui Blanco v. Sandoval*[1] controls. *Saralegui Blanco* reaffirmed a line of cases when it concluded that dogs belonging to tenants or their guests are not conditions of the land, a necessary prerequisite to premises liability.

Although *Saralegui Blanco* did not involve an injury that occurred in a common area, the opinion did not hold that the issue of whether a dog can be a condition on the land depends on the extent of the landlord's control over the portion of the property where the injury occurred. The *Saralegui Blanco* court instead held that the only prior case treating a dog as a condition on the land was an outlier and declined to endorse or follow it.

---

[1] 197 Wn.2d 553, 485 P.3d 326 (2021).

Additionally, the Robinsons rely on *Nivens v. 7-11 Hoagy's Corner,*[2] also a premises liability case that declared a special relationship between business owners and invitees and created a duty to exercise reasonable care to protect invitees from foreseeable harm from third parties. Moreover, the Robinsons rely on cases holding that landlords have a duty to protect tenants from certain foreseeable dangers in common areas. But all of these cases are premises liability cases. Under *Saralegui Blanco,* premises liability in dog bite cases depends on whether the offending dog was a condition on the land, and here, the visiting dog was not. We affirm.

FACTS

I. BACKGROUND

Because this is a review of summary judgment, we describe the facts in the light most favorable to the nonmoving party, the Robinsons.

On the morning of January 3, 2020, while in her home, Reba Robinson[3] heard dogs barking and a woman screaming outside. Reba looked outside and saw two dogs aggressively barking at a woman and her child by the playground area of the townhome complex where Robinson lived. Later that morning, Reba emailed the townhomes' property manager, Tanya Chapman-Nelson, to tell her that aggressive dogs were loose in the common areas. In her email, Reba described the dogs as "German Sheppard looking" and stated she believed the dogs belonged to the Nomura family, who lived in another townhome in the complex.

The same day, Chapman-Nelson investigated the incident and did not find any dogs at the Nomura home. The Nomuras denied that the dogs belonged to them but said that their daughter's

---

[2] 133 Wn.2d 192, 943 P.2d 286 (1997).

[3] Where there are multiple parties who share the same last name, we use first names for clarity.

dog had been visiting them. That dog belonged to their daughter, Kahnora. The lease indicated that no animals were allowed, even temporarily, unless they had been previously authorized in writing. There were also restrictions on the breeds of dogs that would be approved. Chapman-Nelson issued the Nomuras a notice of lease violation for the reported off-leash dogs "chasing child." Clerk's Papers (CP) at 112. Chapman-Nelson did not follow up with Reba to let her know that she had taken this action.

Almost three months later, on April 1, 2020, Reba and her husband, Devin Robinson, saw one of the dogs outside their back door. Reba did not report this to Chapman-Nelson or any other management staff.

A few days later, on the evening of April 7, 2020, Devin and three-year-old Warner Robinson walked from the front of their home to the playground area. Milestone admitted it oversaw and maintained the playground area. As they arrived and Devin was about to let Warner begin playing on the equipment, Kahnora Nomura's dog, Buddha, ran out the front door of the Nomura townhome and charged at Warner. Despite Devin's efforts to protect the child by pushing Warner behind him and blocking the dog, Buddha managed to bite Warner's head and left a wound that required four staples. Reba and Devin called the police and animal control.

Reba also emailed Chapman-Nelson to tell her about the dog bite and remind Chapman-Nelson of Reba's previous complaint. In her response, Chapman-Nelson informed Reba that she had issued a notice of lease violation to the Nomuras just after the January incident.

## II. Procedural History

Reba and Devin, on behalf of themselves and Warner, filed a complaint in Pierce County Superior Court against Milestone at Hudson Heights LLC; Hudson Heights Homeowners' Association; The Milestone Companies LLC; Milestone Investment Properties LLC and Ronald Newman and "John/Jane Doe" Newman (collectively, Milestone). Also included were Brandon Smith[4] and "John/Jane Doe" Smith; Kayno Nomura; Naomi Nomura; and Kahnora Nomura. The Nomura defendants failed to appear, so the trial court entered default judgment against them. They are not parties to this appeal.

The Robinsons claimed that the Nomuras were strictly liable as owners of the dog that bit their son. They also alleged a theory of liability against the Milestone defendants:

> [The Milestone] [d]efendants . . . controlled the common playground area [and] owed a duty to the Robinsons to keep the common playground area safe from known dangers. Milestone and Newman breached that duty by failing to make sure that vicious dogs were not allowed to be owned by other renters or to roam freely in the common areas of the complex, and failing to make sure that Buddha, a known, vicious dog, had been removed from the Hudson Heights Townhomes.

CP at 6-7. Other than discussing a duty to keep a common area playground safe from known dangers, the complaint did not specify the basis of their claim as strict liability, premises liability, liability based on a special relationship, or some combination of these theories.

Milestone filed a motion for summary judgment. In its motion, Milestone argued that it was not liable because "[o]nly the owner, keeper, or harborer of a dog is liable for injury caused by the dog." CP at 18. Milestone also argued in part that any premises liability claim must fail

---

[4] Brandon Smith was a principal of Milestone and a governor of Hudson Heights Homeowners' Association. The Robinsons agreed to voluntarily dismiss Smith prior to summary judgment.

because the dog was not a dangerous condition on the land, as required for there to be a duty under a premises liability theory.

In response, the Robinsons argued that *Saralegui Blanco* was inapplicable because that case involved the dog of a tenant who attacked someone on property that only the tenant possessed. But here, the dog bite occurred in a common area possessed and controlled by the landlord. The Robinsons argued that there was an issue of fact as to whether Milestone breached its duty to protect its tenants from foreseeable risks of injury in common areas. The Robinsons also contended that under *Nivens,* as a landowner, Milestone had a duty to protect its tenants from foreseeable harm arising from the criminal acts of third parties as a matter of law. They claimed that because Reba informed Chapman-Nelson of the prior incident with the dogs, Chapman-Nelson and Milestone had a duty to protect Warner from "the foreseeable criminal conduct of the Nomuras," including allowing their dangerous dog to attack Warner. CP at 174.

In its reply, Milestone again argued in part that under *Saralegui Blanco* the dog had to be a condition on the land for liability to attach. The Robinsons failed to show that a dog visiting other tenants in the complex was a condition on the land for purposes of a premises liability analysis. Additionally, Milestone argued that there was no special relationship between the parties and even if there were, there was no criminal conduct at issue, a necessary element of the special relationship liability claim.

The trial court ruled in favor of Milestone and granted summary judgment. The trial court reasoned that Milestone had no duty to protect the Robinsons from the dog bite. The trial court held that there was no premises liability because the dog was not a condition on the land under *Saralegui Blanco*. And Milestone did not have a duty to protect Warner, despite a special

relationship, because the duty arising under *Nivens* only applies to criminal activity, and the dog bite was not criminal.

The Robinsons appeal.

ANALYSIS

"In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Duty is an issue of law, and summary judgment may be appropriately granted where the defendant had no duty to prevent the alleged injury. *Id*. We review a trial court's ruling on summary judgment de novo. *Saralegui Blanco*, 197 Wn.2d at 557.

I. PREMISES LIABILITY FOR LANDOWNERS

In cases involving premises liability, a landowner owes a duty of care to their business invitees if certain conditions are met. *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 612, 486 P.3d 125 (2021). Washington courts apply a premises liability analysis to civil claims of liability that tenants and their guests bring against landlords for injuries occurring on the landlord's property. *Saralegui Blanco,* 197 Wn.2d at 557 (applying premises liability where a guest of a tenant was injured); *Brady v. Whitewater Creek, Inc.* 24 Wn. App. 2d 728, 745-46, 521 P.3d 236 (2022) (applying premises liability where a tenant was injured). The *Johnson* court explained:

> A possessor of land is subject to liability for physical harm caused to his invitees *by a condition on the land* if, but only if, [the possessor]
>
> > (a) [knew] or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

> (b) should expect that [the invitee] will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

197 Wn.2d at 612 (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS §343 (AM. L. INST. 1965)); *see also Galassi v. Lowe's Home Centers, LLC*, ___ Wn.3d ___, 565 P.3d 116, 122 (2025). Thus, in order for premises liability to attach, the injury must have been caused by a condition on the land, and the landowner's duty is to protect against injuries caused by conditions on the land.

A.      Premises Liability Cases Involving Dangerous Animals

In 1990, this court declined to extend common law liability for dog bites to landlords in *Clemmons v. Fidler*, 58 Wn. App. 32, 36, 791 P.2d 257 (1990). Fidler rented out a home to the Philbrooks who owned a dog. *Id*. at 33. Clemmons brought her two-year-old son to the Philbrooks' party and as she was leaving, the child got close to the dog, which bit her son on the face, causing serious injuries. *Id*. at 33-34. Clemmons sued Fidler, the landlord, claiming that Fidler knew the dog was vicious and was therefore liable for the child's injuries. *Id*. at 34.

This court explained that under the common law at the time, a dog's owner, keeper, or harborer who knew or had reason to know that the dog was dangerous was strictly liable for injuries the dog caused. *Id*. at 34-35. The *Clemmons* court declined to extend liability to a landlord, whether or not they knew that a tenant's dog was dangerous. *Id*. at 35. The *Clemmons* court reasoned that because a landlord could not be liable to a tenant for a dangerous defect in the land caused by a tenant themselves, the landlord could not be liable to that tenant's guests for injuries caused by the same danger. *Id*. at 37. Thus, the *Clemmons* court limited liability for a dog bite to the owner, keeper, or harborer of the dog, and it declined to hold a landlord who was not an owner, keeper,

or harborer liable for the dog bite. *Id*. at 34. The landlord had no duty to protect against harm from a dog owned by a tenant. *Id*.

The Washington Supreme Court then specifically addressed premises liability involving injuries from dangerous animals in *Frobig v. Gordon*, 124 Wn.2d 732, 881 P.2d 226 (1994). The Branches leased their property to Gordon, who owned wild and domestic animals for creative endeavors. *Id*. at 733. Gordon intended to use the property for business purposes, including housing a Bengal tiger. *Id*. Gordon verbally agreed to a list of safety conditions prior to housing the animals on the property; however, none of those conditions were included in the written lease. *Id*. at 734.

With Frobig's assistance, Gordon began filming a commercial for a business on the leased property, featuring the Bengal tiger who was unleashed during the filming. *Id*. The tiger attacked Frobig, who was severely injured. *Id*. Frobig sued the Branches as landowners for negligence. *Id*. at 735. The trial court granted summary judgment in favor of the Branches, dismissing the claims against them. *Id*. The Court of Appeals reversed the trial court, concluding the landlord could be liable under the theory that a landowner has a duty to take reasonable steps to protect third parties from foreseeable injuries. *Frobig v. Gordon,* 69 Wn. App. 570, 576, 849 P.2d 676 (1993).

The Washington Supreme Court reversed the Court of Appeals and affirmed summary judgment dismissal, focusing instead on the animal owner's control over the animal. *Frobig,* 124 Wn.2d at 735, 741. The Supreme Court rejected the reasoning in cases from other states that imposed a duty on landlords to act to enforce lease provisions to prevent injuries to third parties. *Id.* at 739-40. The Supreme Court reasoned that had Gordon adhered to the precautions agreed to prior to signing the lease, the injuries would not have occurred as they did. *Id*. at 739. The Supreme

Court ultimately held "that landlords have no duty to protect third parties from a tenant's lawfully owned but dangerous animals." *Id*. at 740-41.

Division Two later addressed premises liability for a dog bite in *Oliver v. Cook*, 194 Wn. App. 532, 377 P.3d 265 (2016). Oliver leased property from Mero to conduct his auto repair business. *Id*. at 535. One day, Mero's friend Cook brought his dog, Scrappy, to the property and left Scrappy in Mero's truck with the window partially down. *Id*. Mero knew that Scrappy could be aggressive. *Id.* Scrappy had a history of injuring another dog and aggressively chasing a child. *Id*. at 536. When Oliver arrived, he walked past the truck and Scrappy lunged out of the window, biting Oliver in the face and ripping off a piece of his nose. *Id*. at 535-36.

Mero was one of the parties that Oliver sued, alleging negligence under a premises liability theory. *Id*. at 536, 544. Mero moved for summary judgment and the trial court dismissed Oliver's claim. *Id*. at 538. Division Two reversed, finding there was an issue of material fact as to whether Mero breached a duty to Oliver under premises liability theory. *Id*. at 544. This court recognized that premises liability was a distinct claim from strict liability for an owner, keeper, or harborer of a dangerous animal and reasoned that prior dog bite cases had not addressed the distinct premises liability theory. *Id*. at 543, 545. In analyzing premises liability, this court stated, without further discussion, that Scrappy was a condition on the land. *Id*. at 544. This court concluded that summary judgment was not appropriate because there were issues of fact as to whether Mero, as the landowner, breached a duty to Oliver, as a business invitee, to make the property reasonably safe from dangers an invitee might not anticipate. *Id.* at 546. Thus, this court allowed the premises liability claim to proceed.

However, in 2021 the Washington Supreme Court decided *Saralegui Blanco*, describing *Oliver* as an outlier and declining to follow its reasoning, instead concluding that a dog was not a condition on the land. 197 Wn.2d at 555. The Sandoval family rented a single-family home from the Hernandezes. Two years after they moved in, the Sandovals got a puppy, notified the Hernandezes and, with their consent, built a wire fence around the yard. *Id*. Two years after they got the dog, Saralegui Blanco was visiting with one of the Sandovals in the driveway. *Id*. At the time, the dog was in the fenced in yard. *Id.* At the end of the conversation, Saralegui Blanco claimed she saw the dog jump over the fence, while Sandoval claimed the dog went through a hole in the fence. *Id*. at 556. The "dog then knocked Saralegui Blanco to the ground, attacked her, and bit her ear." *Id*. Prior to the attack, Saralegui Blanco had visited the home a number of times and knew about the dog. *Id*. The Hernandezes had seen the dog once before and never had any issues with the Sandovals or the dog. *Id*.

Saralegui Blanco brought claims against the Hernandezes as landowners under both strict liability and premises liability. *Id*. The Hernandezes moved for summary judgment and the trial court granted the motion, dismissing Saralegui Blanco's claims against the landlords. *Id*. The Washington Supreme Court granted review only on the issue of premises liability. *Id*. at 557. The court addressed the dissonance between *Frobig* and *Oliver*, and declared *Oliver* to be an outlier. *Id*. at 563.

Although the Supreme Court discussed the fact that the injury did not occur on property that the landlord still possessed, nor did it occur in a common area, *id* at 559-62, the Supreme Court identified another independent reason why the landlord could not be liable under a premises

liability theory—there was "no basis to find the dog was a dangerous condition on the land, as required to establish a duty." *Id.* at 562. The court explained:

> Under our cases, the conditions generally associated with premises liability duties involve physical features of the property. *See Adamson,* 193 Wn.2d at 188-89 (passenger ramp at a port); *Curtis v. Lein,* 169 Wn.2d 884, 890-91, 239 P.3d 1078 (2010) (wooden dock); *Iwai v. State,* 129 Wn.2d 84, 95, 915 P.2d 1089 (1996) (natural accumulations of snow and ice in a parking lot); *Degel,* 129 Wn.2d at 51-54 (natural body of water on the property); *Tincani v. Inland Empire Zoological Soc'y,* 124 Wn.2d 121, 137, 875 P.2d 621 (1994) (cliff drop off); *Geise,* 84 Wn.2d at 870 (accumulations of snow and ice).

*Saralegui Blanco*, 197 Wn.2d at 563. A tenant's animal is not a physical feature of the property that the landowner owns. The court further explained that *Oliver* was "best described as an outlier to the extent some language suggests the court there considered an animal to be a condition [on] the land." *Id*.

The court also stated, "The general rule, as reflected in *Frobig* and *Clemmons,* is that a nonpossessor landlord is not liable for injuries caused by a tenant's dog." *Id.* And the court "decline[d] to stray from the general rule" in that case and concluded "there [was] no basis to regard the possessing tenants' dog as a dangerous condition on the land." *Id*. Although these statements mentioned possession of the land, the court's overall reasoning and its rejection of *Oliver* made it clear that the court did not consider an animal the landowner did not own to be a condition on the land for purposes of premises liability. Indeed, holding otherwise would depart from *Clemmons,* as well as *Frobig*'s holding that "landlords have no duty to protect third parties from a tenant's lawfully owned but dangerous animals." *Frobig,* 124 Wn.2d at 740-41.

*Saralegui Blanco* alternatively argued that the fence was a dangerous condition on the land because it was inadequate to contain the dog. 197 Wn.2d at 563. The court rejected this argument,

recognizing instead that it was the dog—that the Sandovals brought onto the property—that caused the injury. *Id.*

In sum, under *Frobig* and *Saralegui Blanco*, a landlord cannot be liable under a premises liability theory for an injury caused by an animal belonging to a tenant or tenant's guest because a such an animal is not a condition on the land. Had the Supreme Court believed otherwise, it would have overruled *Frobig* and adopted the reasoning in *Oliver,* rather than calling *Oliver* an outlier and declining to follow it.

B.      The Robinsons' Premises Liability Claim Is Barred Because the Nomura's Dog Was Not a Condition on the Land

Milestone is correct that *Saralegui Blanco* held that the dangerous dog in that case was not a condition on the land, a prerequisite to premises liability. Applying the holding of *Saralegui Blanco* here, the Nomuras' dog, which was visiting the property when it bit Warner, was not a condition on the land. Nothing in the record showed that the dog was a physical feature of the property. Instead, it is undisputed that the dog came and went from the property with the Nomuras' daughter. Because the dog was not a condition on the land, the trial court properly dismissed the Robinsons' premises liability claim against Milestone, relying on *Saralegui Blanco.*

Although the *Saralegui Blanco* court also discussed whether the landlord had possession over the portion of the property where the injury took place, the fact that Warner's injury arguably occurred in a common area does not change this result. The *Saralegui Blanco* court discussed the fact that the dog was not a condition on the land as an independent basis for dismissal because premises liability requires that the injury be caused by a condition on the land. To hold otherwise would make landlords liable for transient conditions created by their tenants, a result that the

Washington Supreme Court has rejected, expressly declining to follow this court's statement that a dog could be a condition on the land.

Instead of departing from the Supreme Court's reasoning in *Saralegui Blanco,* the trial court here followed that case and also ruled consistently with the longstanding principle that it is the owner, keeper, or harborer of the dangerous dog who is liable for injuries the dog causes. We conclude that the trial court did not err when it dismissed the Robinsons' premises liability claim on summary judgment because the Nomuras' visiting dog was not a condition on the land.

## II. SPECIAL RELATIONSHIP

The Robinsons also argue that the trial court erred in dismissing their theory that Milestone owed the Robinsons a duty based on a special relationship. But the special relationship that the Robinsons rely on is that of a landowner to their invitee, or more specifically, a landlord and tenant. But the basis for liability in these circumstances remains premises liability, and thus, the requirement that an animal that caused injury be a condition on the land still applies.

A.     <u>*Nivens* Did Not Eliminate the Requirement That an Animal Be a Condition on the Land</u>

The Washington Supreme Court addressed a special relationship in *Nivens*, a landowner's duty to protect business invitees from certain foreseeable injuries. Nivens was assaulted in the parking lot of a convenience store and he sued the landowner, alleging that they were negligent for failing to provide adequate security measures, including hiring security guards. 133 Wn.2d at 194-96. The court rejected the idea that the business owner had a duty to hire onsite security; however, the court expressly recognized that "a special relationship exists between a business and an invitee because the invitee enters the business premises for the economic benefit of the business." *Id*. at 202.

After declaring that this special relationship exists, the court expressly adopted *Restatement (Second) of Torts* §344, which states that a landowner who holds land open to the public owes a duty in certain circumstances to warn invitees or protect them against harm inflicted by third parties. *Id.* at 203-04. The *Nivens* court also explained limitations on this duty, stating that a possessor of land is not an insurer of an invitee's safety, but the possessor must exercise reasonable care to give invitees protection from foreseeable injury. *Id.* at 204 (discussing comments to §344). Because *Nivens* involved a third party's criminal conduct, the *Nivens* court held, "[A] business owes a duty to its invitees to protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons." *Id.* at 205.

Here, the Robinsons fail to recognize that *Nivens* involved a specific type of premises liability for hazards created by the "conduct of people, particularly criminal conduct," as distinguished from physical hazards. *Id.* at 199. Although *Nivens* discussed the duty to keep business invitees safe from third party criminal conduct in certain circumstances, *Nivens* did not adopt any holding involving other types of hazards on the land. Nothing in *Nivens* eliminated the prerequisite that where an injury is caused by a dangerous animal, the animal must be a condition on the land before premises liability can arise.

B.     A Landlord's Duty to Maintain Common Areas Is Also Based on Premises Liability

The Robinsons also argue that landlords have "'an affirmative obligation to maintain common areas in a reasonably safe condition for a tenant or [their] guest,'" Br. of Appellants at 30, relying on *Sjogren v. Properties. of Pacific. Northwest, LLC*, 118 Wn. App. 144, 75 P.3d 592 (2003) and similar cases. Generally, a landlord has no duty to protect a tenant from open and obvious dangers in a common area; however, in limited circumstances, a duty arises where the

15

landlord should anticipate the harm despite the obviousness of the danger. *Sjogren*, 118 Wn. App. at 149. A duty may therefore arise where it is foreseeable that a tenant or guest may fail to protect themselves against even an obvious danger in a common area. *Id.*

Here again, the theory of liability the Robinsons rely on arises from premises liability. *Sjogren* is a premises liability case that relies on *Frobig* and other premises liability authorities. *Id.* at 148-50. As discussed above, under the premises liability analysis specific to injuries caused by animals, the Robinsons must establish the dangerous animal was a condition on the land, something they fail to do after *Saralegui Blanco.* Thus, we hold that the trial court did not err when it dismissed the Robinsons' special relationship claim, which inheres in premises liability.[5]

## CONCLUSION

We conclude that the Robinsons argue only two avenues for a landowner to be held liable for a dog bite under current Washington law: strict liability for those who own, keep, or harbor the offending dog; and premises liability, which requires that the offending dog be a condition on the land. The cases the Robinsons rely on that discuss a special relationship between landlords and tenants are premises liability cases, so even under a special relationship analysis, the dog must have been a condition on the land. Because Milestone did not own, keep, harbor, or control the offending dog, and the dog was not a condition on the land under *Saralegui Blanco,* Milestone did not have a duty to protect the Robinsons from the dog visiting the Nomuras. But the Robinsons could recover from the Nomuras, who owned, kept, or harbored the offending dog. We affirm.

---

[5] In their reply, the Robinsons raise for the first time other bases for liability, like a failure to investigate and negligent failure to warn. Reply Br. of Appellants at 27. But these claims were not articulated in the compliant, nor were they raised below. As a result, we do not address them further.

No. 59361-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, J.

VELJACIC, A.C.J.