**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 29, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 29, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MARIA JESUS SARALEGUI BLANCO, | ) | |
| | ) | No. 98221-0 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| DAVID GONZALEZ SANDOVAL, | ) | |
| ALEXANDRA BARAJAS GONZALEZ, | ) | |
| and the marital community comprised | ) | |
| thereof, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ERNESTO HERNANDEZ, TERI | ) | |
| HERNANDEZ, and the marital community | ) | |
| comprised thereof, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | Filed : April 29, 2021 |

JOHNSON, J.—This case involves a premises liability claim brought by a visitor against landlords for an injury caused by the tenants' dog. We are asked to decide whether the landlords, Ernesto and Teri Hernandez,[1] owed a duty to the

---

[1] Ernesto Hernandez and his wife, Teri Hernandez, owned several rental properties jointly, including the property at issue here. Ernesto managed the properties and acted as the landlord. Ernesto is referred to here as "Hernandez"; collectively they are referred to as the "landlords."

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

petitioner, Maria Saralegui Blanco. The tenants, David Gonzalez Sandoval, Alexandra Barajas Gonzalez, and Elvia Sandoval, reside in a rented single family home owned by the landlords. While visiting the home, Saralegui Blanco was attacked and bitten by the tenants' dog. Saralegui Blanco sued and alleged that the tenants and landlords were negligent and liable for her injuries. The trial court dismissed the claims against the landlords on summary judgment, and we granted direct review. We affirm the trial court's grant of summary judgment, dismissing Saralegui Blanco's premises liability claim against the landlords.

FACTS

Since 2014, the tenants rented a home in Arlington, Washington, owned by the landlords. When the tenancy first commenced, it was governed by a written lease that expired in 2016. Upon expiration of the lease, the tenants continued to reside in the home and paid monthly rent.

In 2016, the tenants acquired a pit bull puppy. Gonzalez Sandoval notified one of the landlords, Hernandez, of the dog and its breed. He also installed a wire fence enclosing the yard for the dog. Hernandez gave consent to build the fence, but he did not inspect it.

In May 2018, Saralegui Blanco visited the home around noon with four companions for a bible study with Sandoval. Saralegui Blanco is a member of the Jehovah's Witnesses church and regularly engaged in door-to-door bible study.

2

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

That day, Sandoval met with Saralegui Blanco and her companions outside in the driveway. The dog was in the fenced off portion of the yard and barked when Sandoval came outside, where she talked with Saralegui Blanco and her companions for about 10 minutes in the driveway. As the conversation ended, Saralegui Blanco claimed she saw the dog jump over the fence enclosure. Sandoval claimed the dog went through a hole in the fence. The dog then knocked Saralegui Blanco to the ground, attacked her, and bit her ear. A loosened piece of plywood was found on the fence enclosure.

Saralegui Blanco had visited the home about five times before and would meet Sandoval outside the home either in the yard or driveway, or on the porch. She claims that each time, the dog would be in the fenced portion of yard and would jump and bark.

In his deposition, Hernandez stated that he saw the dog only on one occasion in 2017 when he visited the home to collect rent. Prior to the incident, he never had any issues with the tenants or the dog. Gonzalez Sandoval and Sandoval stated in their depositions and declarations that they had had no prior issues with the dog exhibiting aggressive behavior toward humans or other dogs. Gonzalez Sandoval stated that the dog had never escaped from the enclosure before the day of the attack nor were there any issues with the dog biting or chewing the fence. He described that he walked the dog regularly and that the dog did not bark at relatives

3

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

or friends who visited the home. In her deposition, Sandoval described that the dog would bark at strangers who came by the home but would usually stop once prompted.

Saralegui Blanco brought a negligence claim against the landlords under both strict liability and premises liability theories. She also raised claims against the tenants, but those claims are not before us. The landlords moved for summary judgment. The trial court considered declarations and deposition testimony from the parties and other individuals who were present during the incident. The parties also submitted police reports and photo exhibits. The trial court granted summary judgment and dismissed the claims against the landlords. Saralegui Blanco unsuccessfully moved for reconsideration and petitioned for direct review. We granted review of the landlord premises liability issue.[2]

## ANALYSIS

We review an order granting summary judgment de novo. Summary judgment is appropriate where there is no genuine issue as to any material fact, so the moving party is entitled to judgment as a matter of law. To prevail in a negligence claim, the general rule is that a plaintiff must show "(1) the existence of

---

[2] Before our court, the petitioner presents several other theories of liability, including a principal-agent relationship and the implied warranty of habitability. We decline to reach these alternate grounds for liability. Our review is limited to the "landlord premises liability question only." Order, No. 98221-0 (June 3, 2020).

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause."

*Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

Here, the issue before us is whether a duty existed. The parties dispute whether the

landlords owed a duty to the petitioner, who was injured by their tenants' dog,

under a premises liability theory.

We have discussed the underlying premises liability principles in *Frobig v.*

*Gordon*, 124 Wn.2d 732, 881 P.2d 226 (1994). *Frobig* concerned a plaintiff who

was bitten by the tenant's Bengal tiger. The incident occurred on a large property

rented by the tiger's owner. The plaintiff alleged negligence and strict liability

claims against the landlords. In that case, we discussed several common law rules

regarding landlord liability. First, regarding animals, we recognized that "the

owner, keeper, or harborer of a dangerous or vicious animal is liable; the landlord

of the owner, keeper, or harborer is not" because liability flows from ownership or

direct control. *Frobig*, 124 Wn.2d at 735. Second, we recognized that generally,

landlords are not responsible for conditions on the land that are created by the

tenant after the property has been leased. Finally, we determined that landlords

owe no greater duty to the invitees or guests of a tenant than to the tenant. We

noted that "[u]nder Washington law, the landlords would not be liable to the tenant

for the tiger's attack so should not be liable to third parties for injuries inflicted by

the animal." *Frobig*, 124 Wn.2d at 737. We recognized other jurisdictions that

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

have held landlords liable for injuries caused by a tenant's animal where the landlord knows of the danger and has some control over the animal's presence. We declined to adopt that approach. We concluded that as a matter of law, landlords do not owe a duty to protect third parties from their tenant's lawfully owned but dangerous animal. *Frobig*, 124 Wn.2d at 740-41. *Frobig* established the general rule that absent other circumstances, no duty exists where the property is rented and the landlord cedes possession to the tenant.

The petitioner here relies on a Court of Appeals case in which the court considered a negligence claim brought by the tenant against his landlord for a dog bite injury. *Oliver v. Cook*, 194 Wn. App. 532, 377 P.3d 265 (2016). In *Oliver*, the tenant operated an automobile shop on the property. The dog was owned by the landlord's friend, who brought the dog to the property and left it unsupervised in the landlord's vehicle. The tenant was bitten while the dog remained in the vehicle, and the tenant brought a negligence claim against his landlord. The Court of Appeals discussed that in addition to a claim of strict liability for dangerous animals, a distinct duty could exist under a premises liability theory. Although the factual basis for analyzing the claim under a premises liability theory is far from clear, the opinion concluded that sufficient evidence supported the claim proceeding to trial. However, in that case, other factors supported recognition of a duty. The plaintiff-tenant was considered an invitee of the landlord and based on

6

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

this, the Court of Appeals relied on the duty of landowners to invitees as stated in

*Restatement (Second) of Torts* § 343 (Am. Law Inst. 1965). The court considered

the dog a relevant condition on the land and found that genuine issues of material

fact existed as to whether the landlord breached his duty of care. *Oliver*, 194 Wn.

App. at 543-46.

In premises liability actions, the legal duty owed by the landlord is

dependent on whether the person entering the property is a trespasser, licensee, or

invitee. *Degel*, 129 Wn.2d at 49. In this case, the petitioner asserts that she was an

invitee or, at least, a licensee on the premises and urges that one of the

corresponding duties, as stated in *Restatement (Second)* § 343 (invitees)[3] or § 342

(licensees)[4] applies here.

---

[3] *Restatement (Second)* § 343 states, "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
"(c) fails to exercise reasonable care to protect them against the danger."

[4] *Restatement (Second)* § 342 states, "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
"(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
"(c) the licensees do not know or have reason to know of the condition and the risk involved."

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

We need not resolve the petitioner's status here because any distinction makes no difference. While the duties of care owed to invitees and licensees are substantively different, both require that "[*a*] *possessor of land* is subject to liability for physical harm caused to [licensees or invitees] by a condition on the land." RESTATEMENT (SECOND) §§ 342, 343 (emphasis added). To establish the existence of a duty, a plaintiff must show that the defendant *possessed* the land. *See also Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 496, 145 P.3d 1196 (2006) ("[T]he test in a premises liability action is whether one is the 'possessor' of property, not whether someone is a 'true owner' (the titleholder) of property."). We have consistently recognized that a "possessor of land" both occupies the land and controls it. *Adamson v. Port of Bellingham*, 193 Wn.2d 178, 187-88, 438 P.3d 522 (2019); *Jordan v. Nationstar Mortg., LLC*, 185 Wn.2d 876, 887, 374 P.3d 1195 (2016) (citing RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 49 (AM. LAW INST. 2012)). Generally, in a residential landlord-tenant relationship possession and control are transferred to the tenants. *Clemmons v. Fidler*, 58 Wn. App. 32, 38, 791 P.2d 257 (1990) (citing RESTATEMENT (SECOND) § 356 cmt. a; W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 63, at 434 (5th ed. 1984)). While the petitioner's status as an invitee or licensee may be significant in a claim against the tenant dog owners that

8

occupied the property, this claim was brought against the residential landlords, who no longer possessed the property.

A claim, however, can exist in situations where the landlord retains control over a portion of the leased premises. The petitioner claims that the landlords here retained control and evidently possessed the land because the tenant needed permission to make changes to the property or to have a pet. This argument adopts the reasoning of other jurisdictions that allow landlord liability for injuries involving the tenant's pet where a landlord knows of the animal and retains a right to control or remove it. *See Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 512-14, 118 Cal. Rptr. 741 (1975) (a landlord may owe a duty of care where they have actual knowledge of the animal's dangerous propensities and the right to remove the animal from the premises); *Holcomb v. Colonial Assocs*., 358 N.C. 501, 597 S.E.2d 710 (2004) (lease provision where landlord reserved right to remove a pet established sufficient control over the pet to impose liability on landlord); *Gallick v. Barto*, 828 F. Supp. 1168 (M.D. Pa. 1993) (holding a landlord out of possession may be held liable if they have knowledge of and the authority to remove the pet).

Our cases have already considered and rejected arguments for such a rule. In *Frobig*, we recognized that "some courts have held a landlord liable for injuries inflicted by a tenant's dangerous animal where the landlord knows of the potential danger and has some sort of control, either by virtue of provisions in the lease or

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

previous dealings with the tenant, over the animal's presence." 124 Wn.2d at 737.

We reasoned that "[e]ven if we agreed with [that approach], as applied here, there

is no liability." *Frobig*, 124 Wn.2d at 739. We also recognized that landlords

would not be liable to the tenant for an animal attack and so should not be liable to

third parties for injuries inflicted by their tenant's animal. We reasoned that such

an expansion would conflict with the principle that liability flows from ownership

and direct control of an animal and that landlords are not liable for conditions

created by the tenant after possession is transferred.

For similar reasons, in *Clemmons*, the Court of Appeals rejected the

argument for landlord liability based on landlord knowledge and control through

lease provisions. In that case, the tenant's dog bit the plaintiff, a visitor of the

tenant. The plaintiff claimed that the landlord was liable because the landlord knew

that the dog had dangerous propensities. The Court of Appeals held that the

landlord's knowledge was immaterial and affirmed dismissal of the claim against

the landlord. The *Clemmons* court reasoned:

> [W]e see no reason to depart from our settled rule. That rule
> recognizes the notion that a tenancy is equivalent to a conveyance: a
> lessor surrenders both possession *and* control of the land to the lessee
> during the term of tenancy. Our rule also promotes the salutary policy
> of placing responsibility where it belongs, rather than fostering a
> search for a defendant whose affluence is more apparent than his
> culpability.

58 Wn. App. at 38 (citations omitted).[5]

We reject the argument for an expanded duty in this type of claim, which would impose liability on landlords for pets that are allowed on rental properties. Our cases have implicitly, if not expressly, rejected this theory of liability. Under these circumstances, where the property is a single residential unit, a "tenancy is equivalent to a conveyance: a lessor surrenders both possession *and* control of the land to the lessee during the term of the tenancy." *Clemmons*, 58 Wn. App. at 38 (citing RESTATEMENT (SECOND) § 356 cmt. a).

The petitioner alternatively asserts that the claim can proceed on the basis that the driveway where she was injured was a common area under the landlords' control. We have recognized situations where landlords owed a duty to maintain the common areas of the premises. *Degel*, 129 Wn.2d at 49 (citing *Geise v. Lee*, 84 Wn.2d 866, 529 P.2d 1054 (1975)). That issue does not arise here, where the tenant has exclusive possession of the property. The Court of Appeals recognized this principle, holding that where the rental property is a single unit residential home, the tenant exclusively possesses the property. *Phillips v. Greco*, 7 Wn. App. 2d 1, 5, 433 P.3d 509 (2018); *Pruitt v. Savage*, 128 Wn. App. 327, 331, 115 P.3d 1000

---

[5] The *Clemmons* court determined that limiting liability in this way was consistent with the statutory schemes regarding liability for dog bites (RCW 16.08.040), ownership of dangerous dogs (RCW 16.08.070-.100), and landlord liability to third parties for defects (RCW 59.18.060). 58 Wn. App. at 36-38.

11

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

(2005). The Court of Appeals held that landlords did not owe a duty under *Restatement (Second)* § 343 to plaintiffs injured by the garage door, *Pruitt*, 128 Wn. App. at 331, and on the back deck, *Phillips*, 7 Wn. App. 2d at 5, of single family homes because those areas were not common areas.

Here, the driveway where the petitioner was injured was not a common area under the control of the landlords. The facts alleged fail to raise a genuine issue of material fact that the landlords possessed the property regardless of whether the petitioner was an invitee or a licensee. Based on the facts before us, as a matter of law the landlords did not possess the property and thus did not owe a duty to the petitioner under either *Restatement (Second)* § 343 (invitee) or § 342 (licensee).

Finally, the premises liability claim fails because there is no basis to find the dog was a dangerous condition on the land, as required to establish a duty under *Restatement (Second)* § 343 or § 342. Under our cases, the conditions generally associated with premises liability duties involve physical features of the property. *See Adamson*, 193 Wn.2d at 188-89 (passenger ramp at a port); *Curtis v. Lein*, 169 Wn.2d 884, 890-91, 239 P.3d 1078 (2010) (wooden dock); *Iwai v. State*, 129 Wn.2d 84, 95, 915 P.2d 1089 (1996) (natural accumulations of snow and ice in a parking lot); *Degel*, 129 Wn.2d at 51-54 (natural body of water on the property); *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 137, 875 P.2d 621 (1994) (cliff drop off); *Geise*, 84 Wn.2d at 870 (accumulations of snow and ice).

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

The petitioner's reliance on *Oliver* is unavailing. That case is best described as an outlier to the extent some language suggests the court there considered an animal to be a condition the land. *Oliver*, 194 Wn. App. at 544. The general rule, as reflected in *Frobig* and *Clemmons*, is that a nonpossessor landlord is not liable for injuries caused by a tenant's dog. We decline to stray from the general rule here and conclude that in this case, there is no basis to regard the possessing tenants' dog as a dangerous condition on the land as required by *Restatement (Second)* § 342 and § 343.[6]

Alternatively, the petitioner argues that the dog together with the fence constituted a dangerous condition on the land because the fence was inadequate to contain the dog. Generally, landlords are not liable for conditions created by the tenant. *Frobig*, 124 Wn.2d at 736. And here, although the landlords may have given permission, the fence was constructed by the tenants after possession was transferred. The same is true for the dog, which was brought onto the property by the tenants, who were in possession. The landlords did not inspect the fence, but even if they did, the petitioner does not show that any danger could have been discovered. The tenants stated in their depositions that they did not have any prior

---

[6] The petitioner also contends that the dog was dangerous because it was of the pit bull breed. The idea that certain dog breeds are inherently dangerous is without merit. We agree with the legislature's recognition that "a dog's breed is not inherently indicative of whether or not a dog is dangerous and that the criteria . . . should be focused on the dog's behavior." LAWS OF 2019, ch. 199, § 1(1).

13

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

issues with the dog chewing through the fence, digging, or attempting to escape from the area. They stated that the dog had never escaped before. One of the tenants stated that he walked around the enclosure every day to make sure the dog would not get out. In this case, there is no genuine issue of material fact as to whether the fence, in itself, posed any potential danger or injured the petitioner. The source of petitioner's injury was the dog, which was not a dangerous condition on the land.

The petitioner fails to establish a genuine issue of material fact that the landlords possessed the land, retained control over the premises or the dog, or created a dangerous condition. We affirm the trial court.

*Saralegui Blanco v. Gonzalez Sandoval*, No. 98221-0

_____
Johnson, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.