# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| JAMIE BEENEN, an individual, | No. 59591-5-II |
| Appellant, | |
| v. | |
| SKYDIVE TOLEDO, a Limited Liability Company in the State of Washington; and HEATHER WHITTAKER; an individual; JOSEPHINE AIR, a Limited Liability Company in the State of Washington and LEWIS COUNTY d/b/a ED CARLSON MEMORIAL FIELD-SOUTH LEWIS COUNTY AIRPORT, a public entity, | UNPUBLISHED OPINION |
| Respondents. | |

MAXA, P.J. – Jamie Beenen appeals the trial court's grant of summary judgment in favor of Lewis County in her personal injury lawsuit against the County. The action arose from an incident in which Beenen was seriously injured because of a skydiving accident. The skydiving company that took her skydiving, "Skydive! Toledo" (ST), was based at the County's airport. Beenen alleges that she was injured because ST provided inadequate skydiving instruction before and during her skydive.

The County owns the Ed Carlson Memorial Field-South Lewis County Airport (the Airport). Heather Whittaker owns and is the sole employee of both ST and Heather Whittaker d/b/a Josephine Air, LLC (Josephine Air). Josephine Air leased a hangar (hangar 18) at the Airport from the County. Whittaker conducted some of ST's business in the hangar, including providing skydiving training to customers.

Whittaker also owns a property adjacent to the Airport, which she used for skydiving training and as the landing zone for skydivers. The ST worker that instructed Beenen during her skydive was stationed on Whittaker's property. Beenen was injured when she landed on this property.

After her skydiving accident, Beenen filed a lawsuit against ST, Whittaker, Josephine Air, and the County. The trial court granted the County's motion for summary judgment, holding that the County did not owe Beenen a duty.[1]

Beenen argues that the County is liable under a premises liability theory because ST's skydiving operation was a dangerous activity that existed on the County's property. We hold that Beenen's premises liability claim against the County fails because as the lessor of hangar 18, the County owed no duty regarding dangerous activities arising from the leased premises. And we hold that the County did not retain control over hangar 18 so as to subject the County to landlord liability. Accordingly, we affirm the trial court's grant of summary judgment in favor of the County.

---

[1] This appeal relates only to the liability of the County, not the liability of ST, Whittaker, or Josephine Air.

FACTS

*Background*

The County owns and operates the Airport. The County maintains runways and taxiways for use by people using the Airport. It sells aircraft fuel to people operating planes out of the Airport. And the County leases hangars on the premises to various entities.

Josephine Air leased one of these hangars, hangar 18, from the County. Whittaker owns Josephine Air and ST, the business that took Beenen skydiving. Whittaker is the sole employee of both Josephine Air and ST. Whittaker has operated ST from the Airport since 2011.

The County previously leased hangar 18 to another tenant. The lease required written permission from the County to assign the lease or sublease the premises. In 2015, the previous tenant assigned the lease of hangar 18 to Josephine Air. The assignment stated that Josephine Air "pledge[d] to abide by the rules, regulations and ordinances governing the occupancy and use of the airport." Clerk's Papers (CP) at 76. The County approved the assignment.

The County's lease agreement stated: "Lessor covenants that Lessee shall quietly have and enjoy the demised premises without hindrance or interference by Lessor, subject to covenants, agreements, terms, provisions, and conditions of this agreement." CP at 82. The lessee agreed to maintain the premises in a clean and orderly condition, including making any needed repairs and replacements at the lessee's expense. But the County "reserve[d] the right to inspect the premises and improvements upon prior request at any reasonable time throughout the term of this agreement." CP at 89.

The lease provided that the lessee would use the premises "solely for the purpose of aircraft storage and repair and shall make no other use of the premises without the advance written consent of Lessor." CP at 84. The lease also required the lessee to exercise reasonable

caution to prevent fire and accidents on the premises. And the lease required the lessee to maintain liability insurance and to provide the County with a copy of the policy.

With regard to common areas at the Airport, the lease stated:

> Lessee . . . shall have the right of nonexclusive use in common with others of the Airport of public facilities and improvements which are now . . . provided at the Airport including approaches to a hanger and to the runway. . . . Lessee, its . . . invitees, . . . and other persons doing business with Lessor shall have the right of ingress and egress to and from the premises over the airport roadways, subject to regulations governing the use of the Airport.

CP at 84.

Josephine Air allowed ST to use hangar 18. There is no evidence that Josephine Air received permission from the County to sublease hangar 18 to ST.

ST used hangar 18 to conduct some of its skydiving business. ST's customers had to cross the Airport's property to access hangar 18. ST's customers signed waivers, could purchase merchandise, and received some pre-skydive training in the hangar. To take a person skydiving, the aircraft that ST used had to taxi and take off using common areas controlled by the County. ST purchased fuel for its aircraft from the Airport.

Whittaker also owned and controlled property adjacent to the Airport. ST conducted additional pre-skydive training with its customers on this property. And ST used this property as its landing zone, the area where it intended its customers to land at the conclusion of their skydiving experience. This property also was where workers hired by ST stood while they instructed ST customers who had jumped from the aircraft. There is no dispute that the County had no interest in or control over the adjacent property Whittaker owned.

*ST's Interactions with the County*

Whittaker began operating ST in 2011. She operated out of a different hangar at the Airport before she assumed the lease for hangar 18. In July 2013, County officials and

4

Whittaker met to discuss ST's activities at the Airport. The issues they discussed included the following:

> • The pilot for [ST] directed an unidentified pilot to disregard the standard operating practices for "direction of turns."
>
> • The pilot for [ST] refused to connect the ground wire to his aircraft.
>
> • The pilot's movement from the runway to the taxiway is not observing the area(s) designated for that purpose.
>
> • Parked planes blocking the active taxiway.

CP at 787. They discussed that the primary concern was safety.

After this discussion, the County and Whittaker also had a conversation with an inspector from the Federal Aviation Administration (FAA). In this conversation, the FAA inspector discussed the interpretation of federal regulations that applied to parachute operations and operations at the Airport and how they applied to certain situations.

County officials subsequently discussed the meeting with Whittaker at community development board meetings in July and August of 2013. The meeting minutes stated that ST's parachute operations were being checked into, including whether ST had liability insurance. The County also discussed that it was researching how other airports handled issues with skydiving, and that they were exploring the idea of requiring a business license for skydiving to give the County leverage if airport users did not follow the airport's rules. At a later meeting, the minutes stated that Whittaker was "still not following all the rules and regulations – subletting and such." CP at 488.

Whittaker does not remember the County asking about insurance. The County knew that ST had no liability insurance.

In June 2015, the Airport manager observed a skydiver landing on the asphalt taxiway rather than on the adjacent Whittaker property. The person's nose was broken and bleeding, and he was moaning. The person was taken away by ambulance. The County apparently did not investigate this incident.

There were at least six other incidents involving injuries to skydivers between August 2013 and January 2017. These incidents were reflected in records of the Lewis County communications center.

*Beenen's Skydiving Incident*

In July 2017, Beenen and her fiancé decided to go skydiving to celebrate their upcoming wedding. Beenen purchased two vouchers for skydiving with ST. It was Beenen's first time skydiving. On the day of her skydiving experience, ST told Beenen that she would have to sign a nine page waiver to go skydiving.

The waiver stated that Beenen was waiving her right to sue for negligence and that she was releasing claims "as to the adequacy of the training, [or] the competency of the staff." CP at 39. The waiver also stated: "I therefore release and discharge . . . the South Lewis County Airport . . . as well as the owners and lessees of land . . . utilized for skydiving and related activities." CP at 40. Beenen was told that she could not get her money back if she decided not to jump. Beenen signed the waiver.

Beenen also asked about injuries or deaths related to skydiving at ST. She alleges that an ST worker told her that only two people had been injured, and that the injured parties were at fault in those incidents. Beenen stated that she chose to jump based on these representations and because ST was located at a county airport. She stated that after her jump she learned about

more injuries associated with ST, and had she known about these injuries, she would not have jumped.

Beenen received several hours of instruction both in hangar 18 and on Whittaker's adjacent property. The instruction included learning about when to flare a parachute, which is a maneuver where a person manipulates the controls on the parachute to slow their rate of descent as they approach the ground.

The instructor who guided Beenen to the ground during her skydive was a trainee learning to become a skydiving coach. Beenen states that she was not told that the instructor was a trainee and not fully certified. She stated that had she known this, she would have insisted on a different instructor or refused to jump. She also states that had she known that ST was violating its lease at the Airport, or that the County was concerned about the safety of ST, she would not have jumped.

Beenen loaded onto the plane used by ST, and the plane taxied and took off from the Airport without incident. Beenen jumped from the aircraft. The instructor was stationed on Whittaker's property adjacent to the Airport. Beenen stated that during her descent, she received adequate instruction at first. However, Beenen stated that the radio eventually fell silent. Fearing that the instructor no longer was paying attention to her or the radio had gone out, Beenen flared her parachute at the time she believed was appropriate as she approached the ground. Beenen alleges that when she did this, the ST instructor yelled "No! No! No!" CP at 323. In response, she states that she released her flare. This caused her to crash into the ground. She landed on Whittaker's property adjacent to the Airport. As a result of this landing, Beenen was paralyzed from the chest down.

*Summary Judgment*

Beenen filed suit against ST, Whittaker, Josephine Air, and the County. Beenen alleged that she was the business invitee of all the defendants, including the County, and that the defendants owed her a duty to exercise ordinary care for her safety. Specific to the County, Beenen alleged that the County "owed a duty to Plaintiff to use reasonable care, which includes an affirmative duty to use reasonable care in discovering dangerous conditions and an affirmative duty to warn Plaintiff" and that the County "failed to ensure the safety of its premises, as those premises were being used for skydiving." CP at 12.

The County filed a motion for summary judgment, arguing that it did not owe Beenen a duty as a premises owner, that Beenen waived her right to sue by releasing all claims against the County, and that she assumed the risk of skydiving.

In opposition, Beenen submitted a declaration in which she described her interaction with ST as stated above. She also stated,

> I have also learned through the course of this litigation that Lewis County permitted and benefitted from Skydive Toledo operating a Skydive instruction business on the property but that the County a) had various safety concerns about Skydive Toledo before my jump in 2017; b) had not enforced the lease which limited Ms. Whittaker to only use Hangar 18 for airplane storage; and c) did not enforce the provision of the lease that any business carried out at the airport demonstrate they are they are insurable by having liability insurance. Had I known what Lewis County knew about Skydive Toledo's safety issues, and how Lewis County was treating the company, I would not have jumped that day.

CP at 323-24.

Beenen submitted a declaration from an airport executive expert, who stated,

> Many of Lewis County's actions (or inactions) with respect to its decision to allow Skydive Toledo to use its property to operate a separate skydiving instruction business fell below and often greatly below industry standards and conflict with federal regulations and guidance applicable to the owners and operators of public airports. This included failing to vet Skydive Toledo, its business operations, and safety practices before allowing it to operate its business on County property.

CP at 586-87.

Beenen also submitted a declaration from a real estate management expert, who stated,

[T]he County would have purposefully entered into a lease with Josephine Air for airplane storage and repair, while allowing a separate company (SDT) [to] operate a skydive business in violation of the lease. A reasonably prudent landowner would terminate the lease or take other remedial action as soon as it learned that its tenant had violated the terms of the lease by putting the premises to a use not contemplated by the contract.

. . . This is especially true here given that the inherent risks of skydiving are profound in comparison to simply storing and repairing airplanes. The County's decision to allow the skydive company to run unchecked in violation of the lease constitutes conduct falling greatly below what is expected of a municipality running a public airport.

CP at 346. The expert also stated that "allowing SDT to operate from County property without any applicable insurance greatly deviated from the standard applicable to municipal landowners." CP at 347.

The trial court granted the County's summary judgment motion, holding that Beenen was not an invitee of the County and that the County did not owe Beenen a duty. The court also concluded that Beenen waived her right to sue the County by signing the waiver, but later stated that its summary judgment holding regarding the County was not based on the waiver. Subsequently, Beenen voluntarily dismissed her claims against the other defendants.

Beenen appeals the trial court's summary judgment order granting.

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). We view all evidence in the light most favorable to the nonmoving party, including all reasonable inferences. *Id*. Summary judgment is appropriate when no

genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id*. A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id*. But summary judgment can be determined as a matter of law if the material facts are not in dispute. *Antio, LLC v. Dep't of Revenue*, 26 Wn. App. 2d 129, 134, 527 P.3d 164 (2023).

We can affirm a trial court's grant of summary judgment on any ground supported by the record. *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021).

B.    LEGAL PRINCIPLES

Beenen argues that the trial court erred by granting summary judgment in favor of the County because the County owed a duty to Beenen as its invitee. We disagree.

1.    Premises Liability Duty

To prevail on a negligence claim, a plaintiff must show that (1) the defendant owed them a duty, (2) the defendant breached that duty, (3) the plaintiff was injured as a result of the breach, and (4) that the defendant's breach was the proximate cause of the injury. *Stanley v. Sierra Pac. Land & Timber*, 34 Wn. App. 2d 762, 770, 567 P.3d 1161 (2025), *review denied,* 5 Wn.3d 1030 (2026). If the plaintiff fails to make a showing on any of these elements, summary judgment is appropriate. *Id.* at 771.

The threshold question in a negligence claim is whether the defendant owed the plaintiff a duty. *Payne v. Weyerhaeuser Co.*, 30 Wn. App. 2d 696, 711, 546 P.3d 485 (2024). The existence of a duty typically is a question of law. *See id*. But the existence of a duty can depend on the resolution of disputed material facts. *See Mihaila*, 21 Wn. App. 2d at 235-37.

Under premises liability law, the duty of a possessor of land to a person entering onto the land depends on the person's status as an invitee, licensee, or trespasser. *Eylander v. Prologis*

*Targeted U.S. Logistics Fund, LP*, 2 Wn.3d 401, 408, 539 P.3d 376 (2023). An invitee for premises liability purposes includes (1) a public invitee, who "is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public"; and (2) a business invitee, who "is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." RESTATEMENT (SECOND) OF TORTS § 332(2), (3) (AM. L. INST. 1965).

Beenen argues that she was the County's public or business invitee when she went to the Airport to go skydiving with ST. The County does not address this issue. Therefore, we assume without deciding that Beenen was the County's invitee on the day that she was injured.

Section 343 of the *Restatement (Second) of Torts* states the general rule for the duty a possessor of land owes to an invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*See Eylander*, 2 Wn.3d at 408.

When the danger is known or obvious to the invitee, we apply § 343A of the *Restatement*, which states "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *See Eylander*, 2 Wn.3d at 408.

The rationale for the general rule of nonliability for known and obvious dangers is as follows:

> If [the invitee] knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. *The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so.* Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

RESTATEMENT § 343A cmt. e (emphasis added); *see Mihaila*, 21 Wn. App. 2d at 234.

However, the second part of § 343A(1) states that a possessor of land may have a duty if they should anticipate the harm even if the danger is known or obvious. *Mihaila*, 21 Wn. App. 2d at 234. " 'Distraction, forgetfulness, or foreseeable, reasonable advantages from encountering the danger are factors which trigger the landowner's responsibility to warn of, or make safe, a known or obvious danger.' " *Id.* (quoting *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 140, 875 P.2d 621 (1994)).

Beenen also relies on § 343A(2) of the *Restatement*, which states, "In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land . . . is a factor of importance indicating that the harm should be anticipated."

2. Type of Danger

The parties disagree whether premises liability principles apply to a possessor's activities on land as well as conditions on land. Section 343 of the *Restatement* refers to "a condition on the land." Section 343A(1) refers to "any *activity* or condition on the land." (Emphasis added.) In *Saralegui Blanco v. Gonzalez Sandoval*, the Supreme Court stated that "the conditions

12

generally associated with premises liability duties *involve physical features of the property*." 197 Wn.2d 553, 563, 485 P.3d 326 (2021) (emphasis added).

Resolving this issue is not essential to our holding. Therefore, we assume without deciding that premises liability principles apply to a possessor's activities on land.

### 3. Location of Dangerous Condition

Both § 343 and § 343A(1) apply to a dangerous condition (or the possessor's activity) "on the land." This language necessarily means that a possessor of land has no duty regarding dangerous conditions or activities that are not on the possessor's land. "The key to liability from obvious or known dangers is that a condition or activity causing the injury occurs on the landowner's property." *Ganno v. Lanoga Corp.*, 119 Wn. App. 310, 316, 80 P.3d 180 (2003).

## C. DUTY OF LANDLORD

Beenen argues that the County owed her a duty under § 343A(1) of the *Restatement*. But the threshold issue is whether the County owed any duty to Beenen as the lessor of hangar 18. Beenen argues that the County owed her a duty regarding ST's skydiving operation even though Josephine Air leased hangar 18 from the County. We disagree.

### 1. Legal Principles

A premises liability duty extends only to a "possessor of land" where the dangerous condition exists. RESTATEMENT § 343, 343A(1). "To establish the existence of a duty, a plaintiff must show that the defendant *possessed* the land." *Saralegui Blanco*, 197 Wn.2d at 559.

The *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* defines "possessor of land" as "a person who occupies the land and controls it." RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 49(a) (AM. L. INST. 2012). The court in *Saralegui Blanco* adopted this definition. 197 Wn.2d at 559-60. A party controls the

land if they have " 'the authority and ability to take precautions to reduce the risk of harm to entrants on the land.' " *Adamson v. Port of Bellingham*, 193 Wn.2d 178, 187, 438 P.3d 522 (2019) (quoting RESTATEMENT (THIRD) § 49 cmt. c).

In general, when a landowner leases land to a tenant, possession and control of the land is transferred to the tenant. *Saralegui Blanco*, 197 Wn.2d at 560. "[A] tenancy is equivalent to a conveyance: a lessor surrenders both possession *and* control of the land to the lessee during the term of the tenancy." *Clemmons v. Fidler*, 58 Wn. App. 32, 38, 791 P.2d 257 (1990). "By definition, a landlord is not the possessor of noncommon areas." *Phillips v. Greco*, 7 Wn. App. 2d 1, 6, 433 P.3d 509 (2018).

Based on this principle, a landlord's liability for dangerous conditions is limited. A landlord can be liable for latent or hidden defects that existed when the tenancy began. *Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994). And a landlord has a duty to maintain common areas in a reasonably safe condition. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 49, 914 P.2d 728 (1996). Sections 343 and 343A(1) of the *Restatement* apply to common areas. *Id.* at 49-50.

However, a landlord has no duty regarding dangerous conditions that "develop or are created by the tenant after possession has been transferred." *Frobig*, 124 Wn.2d at 736. The fact that the landlord has knowledge of the dangerous condition created by the tenant "has no significance." *Id.* at 737.

Further, a landlord has no duty regarding the tenant's operation of the leased premises. " 'The duty and liability of the invitor-lessor do[es] not, as a rule, extend to matters having to do merely with the lessee's management or operation of premises which would be safe except for such management or operation, at least where the lessee is in sole actual control.' " *Id.* at 736

(quoting *Peterick v. State*, 22 Wn. App. 163, 170-71, 589 P.2d 250 (1977), *overruled on other grounds by, Stenberg v. Pacific Power & Light Co.*,104 Wn.2d 710, 709 P.2d 793 (1985)).

There are exceptions to the general rule of nonliability for a condition that develops after the start of the tenancy. As noted in *Frobig*, a landlord has no duty only if " 'the lessee is in sole actual control.' " of the leased premises. 124 Wn.2d at 736 (quoting *Peterick*, 22 Wn. App. at 170). "A claim . . . can exist in situations where the landlord retains control over a portion of the leased premises." *Saralegui Blanco*, 197 Wn.2d at 560. If the landlord retains control of the property, the landlord may have a duty regarding dangerous conditions on the property. *See Adamson*, 193 Wn.2d at 188-89.

In *Adamson*, the plaintiff was injured when a passenger ramp at a ferry terminal collapsed. *Id*. at 182-83. The Port of Bellingham leased the ferry terminal to a tenant to operate a ferry service. *Id.* at 181. However, the lease gave the tenant only priority use – not exclusive use – of various facilities, including the passenger ramp at issue. *Id.* The Port could allow others to use these facilities. *Id.* In addition, the lease required the Port – not the tenant – to maintain the leased premises in good repair and condition. *Id*. The court concluded as follows: "We hold that a priority use provision, an affirmative obligation to maintain and repair, and the ability to lease the property to others together create sufficient control of the property such that a landowner who leases the property is held liable as a premises owner." *Id.* at 184.

In *Regan v. City of Seattle*, the City leased the Seattle Center Coliseum for a miniature car racing jamboree. 76 Wn.2d 501, 502-03, 458 P.2d 12 (1969). The Supreme Court stated the general rule that "the lessor is not liable for injuries caused by apparent defect after exclusive control of the property has passed to the lessee." *Id.* at 504. However, the court stated that a landlord still could be liable for its affirmative acts of negligence. *Id.* at 505. In that case, there

was evidence that the City affirmatively undertook to help clean the track between races. *Id.* at 507. And there was evidence that the city's negligent cleaning could have caused the accident. *Id*. at 508.

2.  Analysis

Beenen argues that the general rule that a lessor no longer is the possessor of a property and is not liable for the negligence of its tenants does not apply here because there is a question of fact whether the County retained control over the premises associated with the cause of her harm. We disagree.

a.  Hangar 18

It is undisputed that Josephine Air leased hangar 18 from the County. As noted above, the general rule is that when a landowner leases land to a tenant, both possession and control of the land is transferred to the tenant. *Saralegui Blanco*, 197 Wn.2d at 560.[2] As a result, the landlord generally does not have a duty regarding dangerous conditions on the leased land. *Frobig*, 124 Wn.2d at 736. But the landlord may have a duty if the landlord retains control over the leased premises. *Saralegui Blanco*, 197 Wn.2d at 560.

Here, in the lease the County expressly transferred possession and control of hangar 18 to the lessee: "Lessor covenants that Lessee shall quietly have and enjoy the demised premises without hindrance or interference by Lessor, subject to covenants, agreements, terms, provisions, and conditions of this agreement." CP at 82. The lessee, not the County, had the obligation to

---

[2] Beenen argues that this rule is limited to single residential units. The court in *Saralegui Blanco* did state that this rule applies to single residential units, 197 Wn.2d at 562, but this is because that case involved a single residential unit. There is no authority for the proposition that a commercial lease does not transfer possession and control the same as a residential lease.

maintain the premises in a clean and orderly condition, including making any needed repairs and replacements at the lessee's expense.

Beenen argues that a question of fact exists as to whether the County retained control over hangar 18. First, Beenen notes that the County did not lease any property interest to ST, who was not on the lease with Josephine Air. But the key fact is that the County leased hangar 18 to Josephine Air. Regardless of whether ST's use was permissible under the lease, Josephine Air, not the County, was the party entitled to occupy and control hangar 18 during the duration of the lease.

Second, Beenen argues that the County retained control over hangar 18 because the lease required Josephine Air to use the hangar only for aircraft storage and repair without the County's permission, abide by airport rules, and exercise caution to prevent accidents. But a landlord does not retain control over a property if they (1) restrict use of the property by limitations or reservations in the lease agreement, *Regan*, 76 Wn.2d at 504; (2) require a tenant to receive permission to make changes or conduct certain activities, *Saralegui Blanco*, 197 Wn.2d at 560-62; or (3) retain the ability to require compliance with applicable safety laws and regulations, *Peterick*, 22 Wn. App. at 172. We conclude that the lease provisions on which Beenen relies do not show that the County retained the right to control hangar 18.

Third, Beenen argues that the County retained control over hangar 18 because the County had authority to inspect the premises and enforce any lease violations. But all landlords have the right to enforce provisions of the lease. That does not mean that the landlord retains control over the leased premises. Beenen references the 2013 meeting with Whittaker regarding safety issues as an attempt to control Whittaker's conduct. But these meetings related to the conduct of ST's pilot while he was in common areas at the Airport and in the air, not activity in hangar 18 or

related to skydiving operations. In any event, a landlord's knowledge of a dangerous activity on the leased premises "has no significance." *Frobig*, 124 Wn.2d at 737.

Fourth, Beenen argues that the County retained control over hangar 18 because the County could tell Whittaker what businesses she could and could not conduct at the hangar. But as noted above, a landlord does not retain control over a property if they restrict use of the property by limitations or reservations in the lease agreement, *Regan*, 76 Wn.2d at 504. In *Frobig*, shortly before the plaintiff was injured the landlord actually ordered the tenant to cease operating a commercial business on the property. 124 Wn.2d at 734. But that did not subject the landlord to liability. *See id.* at 740-41. The ability to forbid a certain kind of business does not mean that the County retained control over hangar 18.

This case is unlike *Adamson* and *Regan*, the two Washington cases in which a landlord was found liable for injuries on leased premises. In *Adamson*, the landlord retained the right to allow others in addition to the lessee to use the passenger ramp where the injury occurred and agreed to maintain and repair the ramp. 193 Wn.2d 181-82. Those facts are not present here. In *Regan*, the landlord was subject to liability for its affirmative acts of negligence – undertaking to help clean a race track between races. 76 Wn.2d at 505-08. The County did not undertake any responsibility regarding ST's skydiving operations.

We conclude that the County did not retain control over hangar 18 when it leased the hangar to Whittaker. Therefore, what happened inside the hangar could not be the basis for a premises liability claim against the County. Accordingly, we hold that the County did not owe Beenen a duty as the landlord of hangar 18.

b.    Common Areas

Beenen argues that the County did retain possession and control of the common areas at the Airport, including the taxiways and runways that ST used in its skydiving operations. She claims that because use of these common areas was necessary to take her skydiving, the County owed her a duty.

As noted above, the County possessed the Airport's common areas and therefore had a duty to exercise reasonable care to maintain these areas in a reasonably safe condition for use by airport visitors. *See Degel*, 129 Wn.2d at 49. But assuming § 343A(1) of the *Restatement* only extends to the existence of a dangerous condition or activity on the land, Beenen does not allege that there was a dangerous condition or activity in the common areas. And Beenen's use of the Airport's common areas did not cause or contribute to her injuries.

Accordingly, we hold the County did not owe Beenen a duty regarding the Airport's common areas.

c.    Affirmative Negligence

Beenen cites to *Regan* to argue that the County assumed a duty to ensure ST was operating in a safe manner by meeting with Whittaker to discuss safety. We disagree.

Unlike in *Regan*, there is no evidence that the County agreed to help with or participate in ST's skydiving operation. And there is no evidence that the meetings with Whittaker discussing ST's operations at the Airport affirmatively created or increased the danger to Beenen like the potentially negligent cleaning discussed in *Regan*. *See* 76 Wn.2d at 507-08. Even if the meetings evidenced some undertaking to render ST's pilot's conduct safer generally, there is no evidence that the County undertook to regulate who ST hired to train its customers on skydiving. *See Pruitt v. Savage*, 128 Wn. App. 327, 333, 115 P.3d 1000 (2005) (affirming dismissal because

Defendant did not attempt to fix a garage door that fell at random times, even though he tried to fix other problems with garage door).

Accordingly, we hold that the County was not subject to liability based on affirmative negligent conduct.

> d.   Summary

We hold that the trial court did not err by granting summary judgment in favor of the County.[3]

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the County.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
GLASGOW, J.

---

[3] Because of our holding, we do not address the County's argument that Beenen's claim is barred because she signed an express release of her claims against the County.